UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 18-cv-00783<br>) |
| WAL-MART STORES EAST, LP | )<br>) |
| Defendants. | )<br>)<br>) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS**

Defendant Wal-Mart Stores East, LP ("Defendant" or "Walmart") responds in opposition to Plaintiff's motion for contempt and sanctions.

**I.   INTRODUCTION**

Once again, EEOC has rushed to publicly accuse Walmart of wrongdoing because, despite its diligence, Walmart has not been able to meet EEOC's (*not* the Court's) unilaterally set deadlines. EEOC has insisted upon receiving additional information about hundreds of alleged "comparators," which—as the Court appropriately observed at the parties' hearing on June 12, 2019—is unnecessary in light of Walmart's repeated admissions in this case. Nevertheless, Walmart has worked diligently and at considerable cost in time and effort to supplement its discovery responses and provide all available information to EEOC—many times, in multiple formats. At all times, Walmart has kept EEOC reasonably apprised of its discovery efforts. However, even after receiving all available information, EEOC demanded Walmart execute an overly broad stipulation of fact regarding associate TAD eligibility, medical restrictions, and light duty assignments by an unreasonable, artificial deadline imposed by EEOC.  When Walmart was

unable to meet EEOC's unilateral demands, EEOC filed the instant motion for contempt and sanctions. EEOC's Motion should be denied.

First, Walmart has worked diligently to supplement its discovery responses consistent with its previous agreement to do so and this Court's order following the hearing on June 12, 2019.  Second, despite its efforts to provide complete, verified answers to Interrogatory 10(e) and (h)—which is the discovery at issue in EEOC's instant Motion—Walmart advised EEOC that it lacks sufficient information to do so and that such information has nevertheless been rendered moot by Walmart's repeated admissions in this case. Third, EEOC has made no showing that it continues to require the requested information.[1]

For the foregoing reasons and those set forth below, Walmart respectfully requests the Court deny EEOC's Motion.

## II.     RELEVANT BACKGROUND

EEOC alleges Walmart discriminated against former associate Alyssa Gilliam and a class of similarly situated female associates who were pregnant while working at the Menomonie, Wisconsin Distribution Center by failing to accommodate their pregnancy-related restrictions with the same job modifications offered to non-pregnant associates in violation of the Pregnancy Discrimination Act. EEOC claims Walmart failed to accommodate the pregnancy-related restrictions of Gilliam and other similarly situated female associates because it only provided "light duty" or "Temporary Alternative Duty" to associates on worker's compensation and not pregnant associates.

---

[1] EEOC has missed its expert disclosure deadline and attempts to blame Walmart for its delay. Although Walmart does not object to an extension of the deadline, EEOC makes no showing that the requested information is relevant to its decision of whether to engage an expert.

2

Walmart's Temporary Alternate Duty ("TAD") program provides a temporary position or modified job duties to associates with work-related injuries who have been released to work with medical restrictions that prevent them from performing the essential functions of their position. (Exhibit 1). Prior to October 16, 2017, only Wisconsin associates with work-related injuries were eligible for TAD. Effective October 16, 2017, however, Wisconsin associates who are unable to perform the essential functions of their job due to a pregnancy-related condition are also eligible for TAD. (Exhibit 2).

### III.     RESPONSE TO DISCOVERY PROCEDURAL HISTORY

Contrary to the assertions in EEOC's motion, Walmart has not raised new objections to Interrogatory 10 in its Supplemental Answers to Plaintiff's First Set of Interrogatories. In pertinent part, Interrogatory 10 seeks information about non-pregnant associates who requested or received accommodations during the applicable time period. In response, Walmart has maintained the same objections to Interrogatory 10 since it initially responded to Plaintiff's First Set of Interrogatories on May 13, 2019. At that time, Walmart responded to Interrogatory 10 as follows:

> **ANSWER**: Walmart objects to this Interrogatory on the grounds that it is overly broad in time and scope, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case insofar as it asks Walmart to describe in detail every accommodation that was requested—formally, informally, verbally, or in writing—by or provided to any associate of Walmart at any time since 2012. In order to answer this Interrogatory, Walmart would be required to, first, obtain and review hundreds of thousands of records to identify every associate across the entire company who requested an accommodation at any time, regardless of whether such individuals were employed at the same facility as Gilliam or otherwise similarly situated to Gilliam. Walmart objects to doing so, especially where the requested information has no relevance to any party's claims or defenses in this case. Walmart further objects to this Interrogatory as an invasion of privacy to the extent it seeks personal and confidential information regarding current and former Walmart associates who are not parties to this lawsuit.

(Exhibit 3).

3

Nevertheless, in an effort to informally resolve the dispute, Walmart agreed on May 30, 2019 to produce "identifying and other descriptive information regarding . . . all known associates who requested and/or received temporary alternate duty, a job aid, environmental adjustment, or a reasonable accommodation" at the Menomonie, Wisconsin Distribution Center commencing in the next two weeks and on a rolling basis thereafter. (Exhibit 4). Importantly, Walmart specifically stated it was producing the information "subject to and without waiving any of Walmart's objections set forth in its written answers . . . and without conceding that any of the associates are appropriate class members or comparators or that any such information is otherwise relevant." (Exhibit 4). Despite Walmart's agreement to produce this information, EEOC filed a motion to compel on June 3, 2019.

On June 12, 2019, the Court held a two-hour hearing on EEOC's motion to compel. The majority of the hearing focused on the temporal scope of EEOC's discovery requests, which the Court limited to January 1, 2013 through September 20, 2018. With respect to Interrogatory 10, Walmart reiterated its objections and once again offered to produce responsive information for all known associates who requested and/or received TAD or a reasonable accommodation during the responsive time period set by the Court.[2] EEOC accepted Walmart's offer. On June 13, 2019, the Court issued its written order on the motion to compel, granting the motion in part, denying the motion in part, and giving directions to the parties by incorporating its statements during the hearing "all in the manner and for the reasons stated during the hearing." (ECF No. 33).

Since the hearing, Walmart has continued to work diligently to supplement its discovery responses consistent with its agreement and the Court's oral discovery orders. On July 19, 2019,

---

[2] Walmart reiterated these same objections in its written response to EEOC's motion to compel. (ECF No. 32, pp. 12-14).

4

Walmart produced additional policies, investigation records, and detailed descriptive information for the approximately 1,876 current and former associates who worked at the Menomonie, Wisconsin Distribution Center during the responsive time period. (Exhibit 5).[3]

Walmart thereafter served its responses to EEOC's Second Set of Requests for Admission on July 26, 2019. Walmart admitted, among other things, that "non-pregnant associates who had work-related injuries received Temporary Alternate Duty at the Menomonie, Wisconsin DC between January 1, 2014 and October 16, 2017," while "pregnant associates, who did not have work-related injuries, were not eligible for Temporary Alternate Duty at the Menomonie, Wisconsin DC between January 1, 2014 and October [15], 2017." (Exhibit 10).

On August 4, 2019, Walmart produced electronic files containing identifying and other descriptive information for approximately 1,964 instances in which associates of the Menomonie, Wisconsin Distribution Center requested and/or received TAD, a leave of absence, or other reasonable accommodation between January 1, 2013 and September 20, 2018. Walmart also produced electronic files with additional policies and guidelines. (Exhibit 11).

Thereafter, EEOC sent a letter to Walmart outlining the areas in which it believed Walmart's discovery responses remained outstanding. Relevant to the instant dispute, EEOC

---

[3] On the afternoon of July 17, 2019, EEOC requested for the first time that all supplemental document productions be made in a "Relativity compatible load file." (Exhibit 6). On July 19, 2019, Walmart informed EEOC it was working with electronic discovery specialists on EEOC's recent request for all productions to be in Relativity compatible load files; however, Walmart wanted to provide EEOC with supplemental documents as soon as possible, so it is was sending its supplemental production as text-searchable PDFs until such time that it was able to produce the documents in Relativity compatible load files. Despite Walmart's assurances, EEOC sent a letter on July 23, 2019, complaining that the text-searchable PDFs were not "reasonably usable" and demanded, instead, that all subsequent document productions be produced in native format. Walmart promptly responded on July 23, 2019 (Exhibit 7), and July 24, 2019 (Exhibit 8), explaining that Walmart was attempting to produce documents in the EEOC's requested format, but it needed additional information from EEOC to do so. EEOC counsel responded within a few hours, attaching—for the first time—a detailed four-page list of specifications for the requested Relativity compatible load files. (Exhibit 9). The parties communicated about the request over the next few days, and, thereafter, Walmart has made all subsequent productions pursuant to EEOC's Relativity compatible load file specifications.

claimed Walmart had failed to serve a complete response to Interrogatory 10 because it had not provided the medical restrictions or specific light duty assignment given to each associate identified as having received TAD.[4]

On August 16, 2019, Walmart responded that it was working to obtain, review, and produce all of the information requested by EEOC, to the extent any additional information existed. (Exhibit 13).[5] In the process of doing so, however, the undersigned counsel learned Walmart does not maintain records of the specific duties performed by associates who receive TAD assignments and, therefore, had minimal information to supplement Walmart's answer to Interrogatory 10(h). Likewise, with respect to the work restrictions of associates who received TAD (Interrogatory 10(e)), it became apparent that Walmart would not be able to provide a complete response because not all associate files contained information about medical restrictions. Moreover, such information had become cumulative, duplicative, and not proportional to the needs of this case given Walmart's prior admissions regarding TAD eligibility. Walmart therefore requested a conference with EEOC to explain Walmart's position and resolve the issues EEOC viewed as outstanding with respect to Interrogatory 10(e) and (h). (Exhibit 17).

---

[4] EEOC also erroneously claimed Walmart was in violation of Fed. R. Civ. Pr. 34 and this Court's June 12, 2019 oral discovery order by producing electronic, text-searchable PDF files on May 13, 2019 (which production occurred one month before the hearing on EEOC's Motion to Compel and more than two months before EEOC ever tendered its requested specifications for future document productions) and demanded Walmart reproduce such documents in "native format." Despite having no obligation to do so, Walmart agreed to (and thereafter did) send additional copies of the requested documents in native format as Relativity-compatible load files. (Exhibit 12).

[5] Consistent with these representations, on August 30, 2019, Walmart produced additional job descriptions for all associates at the Menomonie, Wisconsin Distribution Center who are believed to have been pregnant during the relevant time period, as well as written confirmation that, aside from the investigation records previously produced for Gilliam, Walmart has received no other internal complaints of pregnancy discrimination by these associates. (Exhibit 14). On September 13, 2019, Walmart served supplemental written responses to EEOC's discovery requests, wherein it identified by Bates number, and in chronological order, each of its Accommodation in Employment – (Medical-Related) policies and related guidelines in effect during the relevant time period, and also explained the steps it has taken to identify and produce ESI in this case. (Exhibit 15). On September 20, 2019, in satisfaction of EEOC's request, Walmart reproduced a list of all salaried members of management and/or Human Resources associates (Walmart produced the names and job titles for these individuals on July 19, 2019). (Exhibit 16).

During the call on September 9, 2019, Walmart did not state it was refusing to produce information responsive to Interrogatory 10(e) and (h). Instead, Walmart explained it provided as complete a response to Interrogatory 10(h) (i.e., the type of light duty provided) as possible when, on August 4, it produced an electronic file with identifying and other descriptive information regarding every associate who received TAD during the responsive time period, because Walmart does not have a record of the specific duties performed by every associate who received TAD assignments during the responsive time period. In fact, the duties of associates on TAD may change from day to day. Walmart's counsel also explained its ongoing efforts to ascertain the work restrictions of the associates who received TAD assignments, and that Walmart would be unable to provide a complete response because not all of the files contained complete information about medical restrictions. Undersigned counsel also questioned EEOC's insistence on receiving information about associate work restrictions, given Walmart's admission that it did not provide TAD to any non-occupationally- injured pregnant associates, regardless of their restrictions, prior to October 16, 2017. To that end, EEOC asked whether Walmart would enter into a stipulation regarding TAD eligibility, and Walmart agreed to consider a proposed stipulation.[6]

On September 13, 2019, consistent with the parties' discussions, Walmart served supplemental interrogatory answers, wherein it further explained the undue burden previously included as an objection:

> Subject to and without waiving the foregoing objections, Walmart has produced identifying and other descriptive information about associates at the Menomonie, Wisconsin Distribution Center who requested and/or received a leave of absence, Temporary Alternate Duty, or other accommodation between January 1, 2013 and September 20, 2018 as WALMART-002599 - WALMART-002601. With respect to associates identified in WALMART-002599 as having requested and/or received a Temporary Alternate Duty ("TAD") assignment during the relevant time period, Walmart objects to providing the information requested by subparts (e) and (h) of

---

[6] Later that same day, on September 9, 2019, Walmart tendered its answers to EEOC's Third Set of Requests for Admission.

7

>this Interrogatory on the grounds that it is cumulative and unduly burdensome, insofar as Walmart has admitted associates who had work-related injuries received TAD at the Menomonie, Wisconsin DC between January 1, 2014 and October 16, 2017, while non-occupationally-injured associates (including those who were pregnant but did not otherwise have a work-related injury) were not eligible for TAD during that same time period. Any additional information regarding, for instance, the work restrictions of or TAD assignment given to an occupationally-injured associate, is therefore superfluous and not proportional to the needs of the case.

(Exhibit 3).[7]

That same day, EEOC sent Walmart a proposed stipulation that greatly exceeded the scope of what the parties discussed. In addition to stating only associates with medical restrictions related to work-related injuries were eligible for TAD and pregnant associates with pregnancy-related medical restrictions were not eligible for TAD, the proposed stipulation asked Walmart to stipulate to the specific types of medical restrictions and the specific types of TAD duties for the associates with work-related injuries. In order to agree to such a stipulation, Walmart would be required to review the files of all the Menomonie associates who received TAD to identify their medical restrictions and TAD duties. Even if Walmart engaged in that process, as previously explained, the results would have limited reliability due to the absence of such information from many of the associates' files. The proposed stipulation, as written, therefore created the exact same discovery issues that Walmart sought to avoid. (Exhibit 18).[8]

As a result, Walmart asked for an extension of EEOC's unilaterally-imposed deadline so Walmart could assess the stipulation. Again, EEOC imposed its own deadline of September 27, 2019, for Walmart to accept the stipulation, indicating it would not consider any revisions to the stipulations. EEOC then rushed to Court to file a motion for contempt when Walmart could not

---

[7] Walmart also made another supplemental document production on September 13, 2019, which included additional policies and guidelines in effect at the Menomonie, Wisconsin Distribution Center during the relevant time period. (Exhibit 15).

[8] In addition, the stipulation is not limited to the Menomonie Distribution Center or this litigation matter.

meet EEOC's unilateral deadline, even though the discovery cut off in this case is May 22, 2020. (ECF No. 12, p. 3).

In the meantime, however, Walmart has continued to work in good faith to resolve this apparent discovery dispute regarding TAD eligibility. Most recently, on October 8, 2019, Walmart sent EEOC a revised draft of the proposed stipulation that addresses EEOC's outstanding concerns. At that time, Walmart asked EEOC to execute the revised stipulation, or if there were changes to the revised stipulation EEOC would like to propose, to stay its motion until such time as the parties determine whether they can reach an agreement on the terms of a stipulation regarding TAD eligibility. Walmart advised EEOC that if the stipulation was not agreeable to EEOC in any form, then it would continue working to gather associate medical and TAD files from the facility and produce them to EEOC, on a rolling basis, in accordance with the Court's instructions and Rule 33(d) of the Federal Rules of Civil Procedure, with the understanding that the files do not contain all of the information EEOC is requesting (i.e., complete records of work restrictions of and TAD assignments given to occupationally-injured associates). (Exhibit 19). EEOC has not responded.

### IV.    STANDARD

Sanctions are available under Rule 37(b) only if the Court has already issued a discovery order with which a party has failed to comply. 7 Moore's Federal Practice - Civil § 37.40 (2019) ("sanctions are available pursuant to Rule 37(b) only if a court has first entered an order compelling the discovery in question, and a party has disobeyed that order"). The cases cited by EEOC establish this principle, but do not apply here, where the EEOC's real issue is Walmart's timing, not its failure to comply with the Court's order.[9] *See Kilty v. Weyerhauser Co.*, 317 F.

---

[9] None of the cases cited by EEOC involve whether a party has been "diligent" in producing responses the party

Supp. 3d 1027 (W.D. Wis. 2018) (identification of two witnesses for depositions near the close of discovery did not violate prior court order requiring plaintiffs to disclose specific witnesses when they had them "in mind to depose"). Because Walmart is continuing to comply with the Court's discovery order in this case, Rule 37(b) is not applicable and the Court should reject the EEOC's motion for contempt and sanctions.

## V. ANALYSIS

### A. Walmart has been working diligently to comply with the Court's order.

EEOC claims Walmart has "refused" to provide "crucial" information to EEOC in violation of the Court's order. EEOC is wrong. From the outset, Walmart has disputed whether the information is "crucial" to the EEOC's case, as this Court also noted. (ECF No. 36 at 27-29). Nevertheless, Walmart has been working diligently since June 12, 2019, to produce documents and information as agreed by Walmart and ordered by the Court. As to Interrogatory 10, in the course of reviewing documents to provide responsive information as agreed, Walmart identified limitations on its ability to provide the full information requested and promptly advised EEOC.[10] In addition, Walmart had already served admissions regarding this exact issue, which Walmart believed to have resolved the issue. As a result, Walmart sought to work with EEOC to find a

---

agreed to provide, as memorialized in a court's discovery order. *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2011) (sanctioned party failed to answer interrogatories at all by court-ordered deadline, then added sixteen new witnesses and inflated damages by a factor of 10); *United States v. Approximately $7,400 in United States Currency*, 276 F.R.D. 596 (E.D. Wis. Oct. 13, 2011) (sanctioned party failed to comply with two court ordered-deadlines); *Kramer v. Am. Bank & Trust Co., N.A.*, 2016 U.S. Dist. LEXIS 41962 (N.D. Ill. March 30, 2016) (sanctioned party failed to meet deadline to produce W2s, tax returns, tax information, and damages calculations); *Halas v. Consumer Servs.*, 16 F.3d 161 (7th Cir. 1994) (pro se party failed to make himself available for deposition, as orally directed by Court); *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376 (7th Cir. 1993) (sanctioned party failed to produce documents because it claimed they did not exist, but witness testified at trial to their existence).

[10] At the time of the hearing, Walmart was awaiting receipt of identifying and other descriptive information for associates who requested and/or received TAD that Walmart had requested from a third party. Walmart had no reason to believe it would not have sufficient information to respond fully to subparts (e) and (h) of Interrogatory 10. It was only after Walmart received and reviewed the information provided by the third party, and after Walmart started culling through facility records for the approximately 160 associates identified by the third party, that it became aware of limitations in its ability to provide a complete, verified response to subparts (e) and (h).

10

way to provide the responsive information (or achieve the same result) without engaging in the burdensome task of reviewing the available records when doing so would nevertheless yield an incomplete and unreliable result. Although EEOC seemed amenable to a stipulation, it has since rushed to Court after Walmart was unable to meet EEOC's take-it-or-leave-it stipulation deadline of September 27, 2019.

The EEOC's real issue appears to be the timing of Walmart's responses, not compliance with its agreed-upon production, as memorialized in the Court's order. Respectfully, while the Court ordered Walmart to respond to the discovery at issue in the motion to compel (as Walmart had already in large part agreed to do), the Court specifically avoided issuing an order regarding a particular time frame in which Walmart would be required to respond to the myriad issues discussed during the June 12, 2019, hearing, involving at least 14 separate discovery requests. Instead, the Court ordered Walmart to work diligently, as it has:

> I'm not going to hold [Walmart] to a 30-day [deadline]. I'm not going to make people work three shifts to get this done as long as people are working diligently and there's no holding back…. That's all I am going to require at this point.
>
> [….]
>
> So I am not going to set a date certain. I am going to make as clear as I can that I'd like this to be done in 30 days. But if it's going to take longer than that, certainly I want it done on a rolling basis and I want the EEOC attorneys kept in the loop on that. And if we have to change things later, we will. But no, I'm not going to put an artificial deadline on just to make it happen that much quicker at this point. We'll let the hand play itself out and hopefully nobody gets hurt.

(ECF No. 36 at 38:12-42:1).

Since the Court's order, Walmart has sought to diligently provide the information it has in its possession, custody, or control. Indeed, Walmart has served at least four supplemental document productions (not including Walmart's reproduction of previously-produced electronic documents and information in accordance with EEOC's belated specifications for same),

11

responded to two sets of Requests for Admission, supplemented its written discovery responses, provided detailed descriptive information for all approximately 1,876 associates employed at the Menomonie Distribution Center for the responsive time period, and produced identifying and other descriptive information regarding all known pregnant associates who requested and/or received a leave of absence and all known associate requests for TAD or a reasonable accommodation during the responsive time period. In fact, even according to EEOC, out of the 14 separate discovery requests raised in its motion to compel, apparently only two subparts of one interrogatory—10(e) and (h)—remain outstanding. In that regard, Walmart has advised EEOC that in the process of attempting to provide complete and verified responses to these subparts, Walmart discovered it does not have the information necessary to do so and, therefore, offered to consider a stipulation that alleviates EEOC's stated need for this information. If the parties are unable to agree to the terms of a stipulation, additional documents are still forthcoming.

On August 16, 2019, Walmart advised EEOC it would produce additional responsive information to Interrogatory 10(e) and (h), if any, when it became available. Indeed, throughout this time, Walmart kept EEOC "in the loop" about its efforts. Thereafter, in the course of working to comply with the Court's order regarding Interrogatory 10, Walmart identified limitations to its ability to fully respond to all subparts, and again it promptly advised EEOC of the status of its response. As Walmart explained to EEOC during a teleconference on September 9, 2019, Walmart does not have a record of the specific duties performed by the associates who received TAD assignments during the responsive time period and, as a result, could not accurately answer and verify this subsection of the interrogatory based on the information in its possession, custody, or control. Although Walmart's TAD policy indicates a requesting associate will receive a letter outlining the position available, the policy does not require the letter be added to an associate's

12

file and, as a result, many associates' files do not contain these letters. In addition, the TAD letters themselves leave the associate's actual day-to-day TAD duties open ended, stating there is a temporary position available that will accommodate the restrictions under which the physician has authorized the associate to return to work and listing some general duties the associate may be asked to perform, such as "detail cleaning" or "processing freight." Thus, Walmart believed it had provided as complete a response to Interrogatory 10(h) (i.e., the type of light duty provided) as was possible when it produced an electronic file with identifying and other descriptive information regarding every associate who received TAD during the responsive time period.[11]

As for the work restrictions of the associates who received TAD, Walmart's counsel explained the ongoing burden to Walmart, as it had been gathering and culling through hundreds of medical and TAD files in an effort to ascertain the work restrictions of the associates who received TAD assignments. Walmart's counsel explained that, even then, Walmart would be unable to provide a complete response because not all of the files contained copies of medical restrictions. As a result, and given Walmart's admission that it did not provide TAD to any pregnant associates regardless of their restrictions prior to October 16, 2017, Walmart's counsel offered to enter into a stipulation that pregnant associates at the Menomonie, Wisconsin Distribution Center were not eligible for TAD for medical restrictions related to pregnancy during the time period from January 1, 2014 to October 15, 2017. Counsel for EEOC stated EEOC would prepare a proposed stipulation and send it for Walmart's review.

---

[11] Citing to nothing but self-serving assertions in its own correspondence, EEOC implies that Walmart must be able to fully respond to subsections (e) and (h) of Interrogatory 10 "because its own Temporary Alternative Duty policy requires Defendant to collect and document the requested information." (ECF No. 37, p. 4). EEOC is wrong. There is nothing in Walmart's Temporary Alternate Duty policy that requires Walmart to retain information regarding medical restrictions or specific duties of associates who received TAD. (Exhibit 1).

However, the EEOC's proposed stipulation greatly exceeded the scope of what the parties discussed. In addition to stating only associates with medical restrictions related to work-related injuries were eligible for TAD and associates with pregnancy-related medical restrictions were not eligible for TAD, the proposed stipulation listed specific types of medical restrictions and specific TAD duties for associates with work-related injuries during the relevant time period. To enter into this stipulation, Walmart would have to: (1) review the files of all the Menomonie associates who received TAD to identify their medical restrictions and assigned TAD duties; (2) review the files of all the pregnant Menomonie associates to identify their pregnancy-related restrictions; and (3) compare and contrast each pregnant associate's medical restrictions with each TAD associate's medical restrictions. Even then, as previously explained, the results would have limited reliability due to the absence of such information from many of the associates' files. The proposed stipulation, as written, therefore created the exact same discovery issues that Walmart sought to avoid. Walmart cannot stipulate to or produce information that it does not have.

Walmart's continuing compliance with the Court's order distinguishes this case from those cited by the EEOC. *Langley v. Union Elec. Co.*, was a negligence case alleging improper installation of a furnace, resulting in carbon monoxide poisoning and death. The sanctioned party failed to produce the furnace when inspection was requested, and then hid the fact that the furnace had been destroyed in a flood. Unlike the solitary tangible object subject to production in *Langley*, Walmart's records comprise thousands of pages of documents that must be located, scanned, reviewed, and distilled in order to respond to the interrogatory. And, unlike *Langley*, Walmart has been diligently attempting to distill that information into a usable form. When Walmart discovered limitations to its information, it promptly informed the EEOC.

*Solis v. Saraphino's* involved a party's non-specific responses to interrogatories. 2010 U.S. Dist. LEXIS 137834 (E.D. Wis. Dec. 16, 2010). For example, in response to a request for employees' dates of employment, hours worked, compensation, and the factual basis for disputing each claim of back pay, the responding party replied: "previously provided to investigator, document unavailable." By contrast, in response to Interrogatory 10, Walmart has produced a spreadsheet containing the name, gender, home address, telephone number, job title, date of injury, date of claim, claim description, TAD start date, TAD end date, and other descriptive and identifying information for approximately 160 associates who received TAD during the relevant time period. Walmart was still working to identify the remaining information (work restrictions and TAD duties) when it identified limitations on its ability to respond and sought to work with EEOC to find a solution. Unlike the foregoing cases, Walmart is not in contempt of the Court's order, and EEOC's motion for contempt should be denied.

**B.   The EEOC is not entitled to fees because Walmart is complying with the Court's order.**

EEOC also "renews its request for reasonable attorney's fees related to the preparation of this motion, as previously set forth in its motion to compel." (ECF 37, p. 6). EEOC's request for attorney's fees should be denied. An order awarding sanctions for disobeying a discovery order must be predicated upon an actual violation of a prior discovery order. Fed. R. Civ. Pro. 37(b)(2). However, Walmart has not violated a discovery order in this case. Indeed, Walmart has been working diligently to produce all information in its possession, custody, or control that it has been ordered to produce in compliance with the Court's June 13, 2019, order (as Walmart had already agreed in large part to do).

Moreover, to the extent EEOC is seeking attorney's fees related to its prior motion to compel, the Court already denied EEOC's request:

> Okay. Then I'm not going to shift costs here. Both sides asked for it. 37(a) says that loser pays. Well, there's no actual loser here. Both sides won a little bit, both sides lost a little. Some compromises were achieved along the way.

(ECF No. 36, p. 63: 20-24). Therefore, EEOC's request for attorney's fees should be denied.

### C. The EEOC has not shown good cause for an extension of the expert discovery deadline, but Walmart has no objection.

In the final paragraph of its motion, EEOC seeks an extension of the expert discovery deadline, which was October 4, 2019. It claims "[b]ecause the EEOC has not received the information above, it has been unable to determine if it will require an expert." (ECF No. 37 at 7). EEOC has not met its burden to show good cause to extend the deadline; regardless, Walmart has no objection to the requested extension.

Federal Rule of Civil Procedure 6(b)(1) permits the extension of a deadline upon a showing of "good cause." Here, EEOC claims it needs the information in Interrogatory No. 10 to determine whether it requires an expert, but such a blanket unspecific statement does not establish good cause. The EEOC has not articulated how the information in Interrogatory No. 10, which is an associate's medical restrictions (for example, "cannot lift more than 20 pounds") and related accommodations (for example, "detail cleaning") could trigger the need for an expert. EEOC has not described to Walmart why it needs this information to determine whether it needs an expert, either. Nevertheless, Walmart previously indicated to EEOC it would have no objection to an extension of the deadline. Yet, instead of simply reaching out to Walmart to confirm its agreement to the request, EEOC again has rushed to Court seeking judicial intervention, blaming Walmart for the request, when the parties could have resolved the issue on their own.

To be clear, Walmart has no objection to the requested extension, but Walmart objects to the implied assertion that Walmart's continued diligence in responding to EEOC's discovery requests is the cause of the requested extension. This Court recognized the breadth and depth of

16

discovery at issue, and it specifically avoided setting a specific deadline for Walmart to complete production.

## VI. CONCLUSION

For the foregoing reasons, Defendant Wal-Mart Stores East, LP respectfully requests the Court deny the EEOC's motion for contempt and sanctions in its entirety and grant Walmart all other just and proper relief.

Dated this 10th day of October, 2019.

s/ *Susan M. Zoeller*
Susan M. Zoeller
Leeann P. Simpkins
JACKSON LEWIS P.C.
211 N. Pennsylvania Street, Suite 1700
Indianapolis, IN 46204
Direct Tel: (317) 489-6930
Direct Fax: (317) 489-6931
susan.zoeller@jacksonlewis.com
leeann.simpkins@jacksonlewis.com

*Attorneys for Defendant Wal-Mart Stores East, L.P.*

4819-1763-7801, v. 1